# IN THE COURT OF APPEALS OF IOWA

No. 14-0892
Filed September 17, 2014

IN THE INTEREST OF K.F. and P.M.
    Minor Children,

D.F., Father,
    Appellant,

P.M., Mother
    Appellant.
_____

Appeal from the Iowa District Court for Fayette County, Alan D. Allbee, Associate Juvenile Judge.

The mother of K.F. and P.M., and the father of K.F. appeal from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

John J. Sullivan of Sullivan Law Office, P.C., Oelwein, for appellant-father.

Brannon Burroughs, Sumner, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, M. Wayne Saur, County Attorney, and Nathan James Lien, Assistant County Attorney, for appellee.

Melissa Anderson-Seeber of Waterloo Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Patricia, the mother of K.F. and P.M., and David, the father of K.F., appeal the juvenile court's order terminating their parental rights to these children.  With respect to K.F., both Patricia and David contend the statutory ground for termination of their parental rights is not supported by clear and convincing evidence and termination of their parental rights is not in the child's best interest.  With respect to P.M., Patricia does not challenge the statutory ground for termination of her parental rights.  Instead, she contends only that the termination of her parental rights with respect to P.M. is not in the child's best interest.  The father of P.M. has not appealed the termination of his parental rights.

I.

K.F. and P.M., born in 2008 and 2011, respectively, were removed from Patricia's care in July 2013 when she physically assaulted her sister while P.M. was in close proximity and placed in imminent risk of physical harm.  The children were placed in family foster care, where they have remained throughout these proceedings.

In August 2013, shortly after the children were removed from the home, Patricia was arrested on several charges, including felony burglary.  In December 2013, Patricia was convicted of burglary in the second degree, assault with intent to inflict serious injury, assault causing bodily injury, and delivery of prescription drugs.  She was sentenced to an indeterminate term of incarceration not to exceed ten years.  In addition to these most recent convictions, Patricia has extensive prior criminal history, including convictions for theft, burglary,

interference with official acts, possession of a controlled substance, disorderly conduct, harassment of a public official, operating while intoxicated, driving while barred, and probation violations.

At the time of the children's removal, David already was incarcerated. Unlike Patricia, however, David was not incarcerated during the entirety of these proceedings. He was discharged from prison in April 2014 and had eight supervised visits with K.F. before the termination hearing in May. The contact with K.F. following discharge from prison was the first contact David had with his son in two years. Like Patricia, David has significant criminal history, including multiple convictions for domestic abuse assault, and convictions for interference with official acts, burglary, willful injury, and voluntary manslaughter. In addition, he has violated probation and no-contact orders.

This case is not the first instance in which Patricia and David have become involved with the department of human services and ultimately lost their parental rights. In 2007, their parental rights to two older children were terminated. In that case, child abuse reports were founded against the parents for denial of critical care and lack of proper supervision. It was found the parents' relationship was unstable and included instances of domestic violence. Further, the mother had a history of untreated mental health conditions and untreated poly-substance abuse.

In this case, in September 2013 the children were adjudicated in need of assistance. Based on the termination of Patricia and David's parental rights to their older children in 2007, the juvenile court in this case found aggravating

circumstances under Iowa Code section 232.102(12) (2013) and waived the requirement of making reasonable efforts to reunite the father with K.F. In May 2014, following a contested termination hearing, the court terminated Patricia and David's parental rights to K.F. pursuant to Iowa Code section 232.116(1)(g) and Patricia's parental rights to P.M. pursuant to section 232.116(1)(h). The parents each filed an appeal.

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480-81 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 481. While giving weight to the findings of the juvenile court, our statutory obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when "there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

III.

A.

David contends the State failed to prove he continues to lack the ability or willingness to respond to services that would correct the situation and that an additional period of rehabilitation would not correct the situation. *See* Iowa Code § 232.116(1)(g)(3)-(4). He argues he is out of prison, has started seeking housing and employment, and has started reestablishing his relationship with K.F. He requests additional time to reunite with the child, and he asserts he would be able to provide a stable home for K.F. within the next six months. We conclude the ground for termination is supported by clear and convincing evidence and additional time is not warranted.

First, David did not take advantage of the time before he went to prison to establish or maintain a relationship with K.F. Likewise, during his incarceration, David did not seek contact with K.F. Second, since his release from prison, David has not asked for other services, such as parent skill training. He also declined the offer of mental health and substance abuse treatment, stating they were not necessary. Third, the prior termination of David's parental rights to two other children and his inability to live a crime-free life, even while on probation, convince us an additional period of rehabilitation and additional time would not likely lead to his being reunited with K.F. We, like the juvenile court, conclude David lacks the ability or willingness to respond to services that would correct the situation. Clear and convincing evidence supports termination of his parental rights under section 232.116(1)(g).

The father also contends termination is not in K.F.'s best interest. Even when the State satisfies the statutory grounds for termination under section 232.116(1), our decision to terminate parental rights must reflect the children's best interests. *In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994). The best-interest determination focuses on the child's safety; physical, mental, and emotional condition and needs; and the placement that best provides for the child's long-term nurturing and growth. Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (citing to section 232.116(2)). We conclude the termination of David's parental rights is in K.F.'s best interests.

Other than the bare assertion in the issue statement in his appeal brief, David makes no argument on appeal as to why termination of his parental rights is not in K.F.'s best interests. The evidence shows, however, K.F. needs stability in his life and a caretaker that can meet his mental and emotional needs. K.F. already exhibits disruptive and violent behavior, including throwing chairs. A diagnosis of oppositional defiant disorder has been suggested and there is concern a diagnosis of reactive attachment disorder could be appropriate. K.F.'s foster family is meeting these emotional needs. In contrast, the father has no real relationship with K.F. He has not nurtured K.F. nor met his needs in the past. The father's past violent criminal conduct—such as voluntary manslaughter, domestic abuse, and willful injury—make it unlikely he is the best placement to provide for K.F.'s immediate and long-term nurturing and growth, especially with K.F.'s significant mental and emotional needs.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012). We conclude termination of the father's parental rights is in K.F.'s best interest.

B.

We next address Patricia's appeal. She does not challenge the statutory ground for terminating her parental rights to P.M. pursuant to section 232.116(1)(h). Concerning K.F., the mother contends the State did not prove she continues to lack the ability or willingness to respond to services and that an additional period of rehabilitation would not correct the situation. *See* Iowa Code § 232.116(1)(g)(3)-(4). She argues she pursued rehabilitative services before her incarceration and is actively procuring and participating in services in prison. We conclude clear and convincing evidence supports the ground for termination.

Patricia has significant history with the department of human services. As previously noted, the mother's parental rights to two older children were terminated in 2007. In addition, K.F. previously was removed from her care prior to this case. In the prior case, a child protective assessment was founded for lack of proper supervision and failure to provide adequate shelter when a search warrant executed at K.F.'s home resulted in the authorities finding illegal drugs, drug paraphernalia, and food and animal waste accessible to the then toddler

K.F. Although Patricia has been involved with services concerning her children at least three times, she does not obtain any lasting benefit from those services. We conclude the State proved the mother lacks with willingness and ability to respond to services and that an additional period of rehabilitation would not correct the situation.

Patricia also argues termination is not in K.F.'s and P.M.'s best interests because she has been making progress with services while incarcerated. We find the argument without merit. At the time of the termination hearing, the mother was serving a ten-year prison sentence and could not care for her children. See Iowa Code § 232.116(2)(a); *see also In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) (providing a child should not have to wait for a parent to be released from prison). Further, prior to the time of her incarceration, she was not able to care for the children. What's past is prologue. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parent's past performance because it may indicate the quality of care the parent is capable of providing in the future."). Patricia has repeatedly shown over the course of a significant period of time that she is a danger to herself and to others, including her children. In contrast, Patricia's children are now integrated into the foster family, which is providing well for their needs. *See id.* § 232.116(2)(b). Considering the children's immediate and long-term best interests and the factors set forth in section 232.116(2), we conclude termination of the mother's parental rights is in the best interests of these two children.

IV.

For the foregoing reasons, we affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**