**IN THE COURT OF APPEALS OF IOWA**

No. 22-0575
Filed May 25, 2022

**IN THE INTEREST OF W.T., K.T., and T.T.,**
**Minor Children,**

**S.T., Father,**
      Appellant.
_____

      Appeal from the Iowa District Court for Linn County, Cynthia S. Finley,

District Associate Judge.


      A father appeals the continued removal of his three children from his care.

**AFFIRMED.**


      Michael Lindeman, Cedar Rapids, for appellant father.

      Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

      Rebecca Williams, Cedar Rapids, attorney and guardian ad litem for minor

children.

      N.T., Cedar Rapids, self-represented mother.


      Considered by Vaitheswaran, P.J., and Tabor, and Badding, JJ.

**TABOR, Judge.**

The juvenile court adjudicated thirteen-year-old W.T., nine-year-old K.T., and eight-year-old T.T. as children in need of assistance (CINA) based on concerns about their father's violent behavior and reported substance abuse. The court removed the children from the father's custody and placed them in the sole care of their mother, Nicole, subject to supervision by the Iowa Department of Human Services (DHS). Their father, Shane, appeals the continued removal, contending the State failed to prove that the children were in "imminent danger" in his care. Because the record contains clear and convincing evidence that Shane's assaultive conduct endangered his son and the continued removal is necessary for the safety of all three children, we affirm.

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). The State must prove allegations in the CINA petition by clear and convincing evidence. Iowa Code § 232.96(2) (2021). Clear and convincing is a higher burden than a preponderance but lower than proof beyond a reasonable doubt. *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). Although we do not rubber stamp the juvenile court's fact findings, we give them serious consideration. *See id.* Our primary concern is the children's safety and well-being. *See id.*

Shane and Nicole divorced in 2016. The decree awarded joint legal custody and placed physical care of the children with Nicole. The decree also directed that a domestic abuse protective order obtained by Nicole stay in place, modified to allow for visitation by Shane. In the years after the divorce, the DHS was called to conduct more than a dozen child abuse assessments of this family. At least half of those assessments involved allegations that Shane was using

methamphetamine, heroin, or other drugs while caring for the children. None of those assessments ended in a confirmed case of child abuse.

The only founded report of abuse by Shane occurred in November 2021. So we focus on that incident. As captured on security video, Shane entered a restaurant, located the husband of his live-in girlfriend, and shoved him out the door onto the ground. As Shane punched the man on the ground, his thirteen-year-old son, W.T., ran from the parking lot to intervene in the fight. The boy tried to separate his father from the other man while restaurant staff were drawn to the scene. But even after staff broke up the fight, Shane continued to act aggressively as his son again positioned himself between the grown men. As the other man hurried away, Shane made one last effort to give chase, all while W.T. embraced his father to prevent him from reinitiating the fight.

After that incident, the State charged Shane with child endangerment and assault causing bodily injury. It also petitioned for Shane's three children to be adjudicated as CINA. Aside from the assault, the petition relied on an attached affidavit from a DHS social worker detailing the unconfirmed allegations of substance abuse by Shane.

The juvenile court considered the State's petition at a March 2022 adjudication and disposition hearing. The State presented two witnesses: a restaurant employee who saw the fight and the DHS social worker. The social worker testified about the DHS concerns that Shane was abusing drugs. But she acknowledged that she "did not have enough information to substantiate the substance abuse." And although "numerous individuals," including Shane's family members, made reports, she did not know "if they're necessarily reliable or not."

The worker also testified that Shane refused drug testing and was overall uncooperative with their investigations. In fact, he would slam the door in workers' faces and hang up during phone calls. Addressing the assault, the worker believed Shane "was neglectful of [W.T.'s] needs" by continuing the fight despite the potential danger for his son. She also testified that the police reported that Shane was intoxicated when he committed the assault.

After the hearing, the court granted the CINA petition, finding "the court's aid" was needed to keep the children safe from their father. *See* Iowa Code § 232.96(9). The court cited Iowa Code section 232.2(6)(c)(2) and 232.2(6)(n). As for its disposition, the court ordered the children be removed from Shane and remain with Nicole under DHS supervision. Shane appeals.

In his petition on appeal, Shane contends the juvenile court erred in finding substantial evidence that the children could not remain in his care. On the facts, he stresses that all the child abuse assessments were "unfounded" except the assault. And he claims the assault assessment "was based on speculative evidence and hearsay information which was not corroborated by the department." On the law, he emphasizes that parents should retain custody of their children unless "substantial evidence exists to believe that removal is necessary to avoid imminent risk to the child's life or health." *Id.* § 232.95(2)(a). And he urges that removal from his custody was not "the least restrictive disposition" as required by Iowa Code section 232.99(4).

The State responds that imminent danger can include a parent's refusal to comply with a child protection worker's request for a "medically relevant test." *See id.* § 232.78(1)(b)(2). The State contends the DHS made "numerous reasonable

requests for the father in this case to provide a drug test based upon credible reports of drug use by those acquainted with the father and he refused." Those refusals, in the State's view, mean imminent danger for the children if left in Shane's care. *See In re H.S.*, No. 19-0154, 2019 WL 1941552, at *2 (Iowa Ct. App. May 1, 2019) (holding court appropriately based temporary removal order on mother's refusal to take the test requested by the child protection worker); *but see In re A.C.*, 852 N.W.2d 515, 519 (Iowa Ct. App. 2014) (finding no statutory authority to support ex parte pre-adjudication parental drug-testing order).

Trouble is, the State did not make that "medically relevant test" argument to the juvenile court, and the court did not base its dispositional order on that statute. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) (discussing error preservation). So we decline to decide whether—admittedly without "information to substantiate the substance abuse" by Shane—the DHS made reasonable requests for him to submit to drug testing. The social worker testified that it would have been "very easy to clear things up if he would be willing to drug test." But the onus is not on the parent to disprove the DHS suspicions. *See A.C.*, 852 N.W.2d at 518 (outlining what DHS may do on receipt of child abuse complaint). Shane's refusal to drug test is not enough to warrant the CINA adjudication or removal order.

But that does not end our inquiry. As the State argues, the record established the father's history of threatening and assaultive behavior. Shane has assaulted Nicole in the presence of the children. In the most recent incident, Shane pushed and pummeled his girlfriend's husband while accompanied by his middle-school-aged child. And Shane persisted as the aggressor even after the child intervened to stop the violence. We find no merit to Shane's argument that

the State's evidence of the assault was too speculative. The State offered a video recording of the assault corroborated by a restaurant employee. Bottom line, Shane's out-of-control anger in the presence of his son satisfies the ground for adjudication under section 232.2(6)(c)(2). *See In re L.H.*, 904 N.W.2d 145, 154 (Iowa 2017) (considering "long-standing anger management issues and violent tendencies" and "history of domestic violence"). On top of that, the record shows Shane was intoxicated when he committed the assault, which supports the adjudication under section 232.2(6)(n).

We next turn to the question of the children's removal from Shane's care. *See In re A.M.H.*, 516 N.W.2d 867, 872 (Iowa 1994) (confirming ability to review whether children's continued removal from a parent is appropriate). Following a dispositional hearing, "the court shall make the least restrictive disposition" of those "listed in sections 232.100 through 232.102 in order from least to most restrictive." Iowa Code § 232.99(4). Whenever possible, children should be in parental custody unless there is clear and convincing evidence the child "cannot be protected from physical abuse" or "some harm which would justify the adjudication of the child as a child in need of assistance." *Id.* § 232.102(4). As an example of that harm, we have decided that a parent's inability to regulate their emotions and inappropriate interactions with DHS workers pose a risk to their children. *See In re K.G.*, No. 21-1384, 2022 WL 244855, at *7 (Iowa Ct. App. Jan. 27, 2022). Here, Shane's drunken attack on his girlfriend's husband, which directly endangered his son, puts all three children at risk of harm when in his care. *L.H.*, 904 N.W.2d at 152 (recognizing "common sense" notion that parent's abuse of one child

endangers siblings).  On this basis, sufficient evidence supports the children's continued removal from Shane's custody.

**AFFIRMED.**